# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY CHANG, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: 1:18-cv-06965-JGK |
| Plaintiff, | |
| v. | CLASS ACTION |
| HELIOS AND MATHESON ANALYTICS INC., THEODORE FARNSWORTH and STUART BENSON, | |
| Defendants. | |
| JEFFREY BRAXTON, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 1:18-cv-07242-JGK |
| Plaintiff, | |
| v. | CLASS ACTION |
| HELIOS AND MATHESON ANALYTICS INC., THEODORE FARNSWORTH and STUART BENSON, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE HELIOS AND MATHESON INVESTOR GROUP'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# **TABLE OF CONTENTS**

I.    SUMMARY OF THE ARGUMENT ................................................................. 1

II.   ARGUMENT ............................................................................................... 2

   A.   The Helios and Matheson Investor Group Has the Largest Financial Interest .................. 2

   B.   The Helios and Matheson Investor Group is a Proper Lead Plaintiff Group ...................... 3

     1.   The Helios and Matheson Investor Group Has Demonstrated its Cohesiveness ............ 4

   C.   Cappucci's Personal Attacks are Unfounded and Irresponsible ......................................... 7

   D.   Cappucci's Motion is Lawyer-Driven ................................................................................ 9

III.   Conclusion ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Top Ships Inc.*,
    2018 U.S. Dist. LEXIS 121765 (E.D.N.Y. July 20, 2018) .................................................... 3, 6

*Chahal v. Credit Suisse Grp. AG*,
    2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) .................................................... 3, 6

*Emerson v. Genocea Biosciences, Inc.*,
    2018 U.S. Dist. LEXIS 22228 (D. Mass. Feb. 12, 2018) ...................................................... 3, 5

*Hansen v. Ferrellgas Partners, L.P.*,
    2017 U.S. Dist. LEXIS 814520 (S.D.N.Y. Jan. 19, 2017) ....................................................... 3

*In re Aqua Metals Sec. Litig.*,
    2018 U.S. Dist. LEXIS 86889 (N.D. Cal. May 23, 2018) ........................................................ 3

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................................... 6

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) ...................................................... 6

*In re LightInTheBox Holding Co., Sec. Litig.*,
    2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013) ...................................................... 6

*In re MGT Capital Invs., Inc*,
    2017 U.S. Dist. LEXIS 59130 (S.D.N.Y. Apr. 11, 2017) ......................................................... 6

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ........................................................................................... 5, 6

*Jiehua Huang v. Airmedia Grp., Inc.*,
    2015 U.S. Dist. LEXIS 178083 (S.D.N.Y. Nov. 10, 2015) ...................................................... 2

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ........................................................ 2

*Lawrence v. Bank of America Corporation, et al.*,
    Case No. 1:11-cv-6678-JGK (S.D.N.Y) .................................................................................. 3

*Micholle v. Ophthotech Corp.*,
    2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ........................................................ 6

*Peters v. Jinkosolar Holding Co.*,
    2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) ........................................................ 4

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................ 6

*Seidel v. Noah Educ. Holdings, Ltd.*,
   2009 U.S. Dist. LEXIS 25949 (S.D.N.Y. Mar. 9, 2009) .................................... 4

*Simmons v. Spencer*,
   2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 24, 2014) ................................... 4

*Sofran* v. *LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................................ 8

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008).............................................................................. 4

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2015 U.S. Dist. LEXIS 36409 (S.D.N.Y. Mar. 23, 2015) .................................. 8

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) ............................................................... 9

*Zemel Family Tr. v. Philips Int'l Realty Corp.*,
   205 F.R.D. 434 (S.D.N.Y. 2002) ........................................................................ 7

**Statutes**

15 U.S.C. §77z-1(a)(3)(B)(iii)(I) ................................................................................ 3

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................................................... 3

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................................................... 2

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)............................................................................... 1

Movant George Hurst, Marcus Washington, Daniel Mercer, Juan Taveras, and Amit Katiyar (collectively the "Helios and Matheson Investor Group" or the "Group"), hereby replies to the Opposition of Robert Cappucci ("Cappucci") to Competing Lead Plaintiff Motions.[1] (Dkt. No. 43).

## I. SUMMARY OF THE ARGUMENT

The Group is the presumptive lead plaintiff because it has the largest financial interest in the Related Actions, incurring *more than $2.5 million in losses*, and satisfies the requirements of Rule 23. Recognizing as much, Cappucci resorts to lobbing unsubstantiated personal attacks against members of the Group and by attacking its relationship with counsel (while ignoring his own peculiar attorney-client relationship). The Group consists of five sophisticated investors each with significant losses in Helios and Matheson Analytics, Inc. ("HMNY") stock. *See* Dkt. No. 20, Ex. E (the "Joint Declaration"), ¶8. The Group's members decided to move together for appointment as lead plaintiff after contacting Levi & Korsinsky and recognizing each other's motivation to litigate the Related Actions. *Id.*, ¶9. Before moving, the Group members discussed and decided on: their selection of Levi & Korsinsky as counsel, attorney's fees, a mechanism for dispute resolution, their plans to work cooperatively and to oversee counsel, and to recover as much as possible for the Class. *Id.,* ¶¶14, 15.

Cappucci's attacks amount to nothing more than an irresponsible ploy to confuse the issues and force a response from the Group to his reckless accusations. These attacks fall well short of the "proof" required to rebut the statutory presumption favoring appointment of the Group as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Jiehua Huang v. Airmedia Grp., Inc.*, 2015 U.S. Dist.

---

[1] All other movants either filed notices conceding that they are not the presumptive lead plaintiff or have abandoned their motions.

LEXIS 178083, at *6-7 (S.D.N.Y. Nov. 10, 2015) ("speculative and hypothetical allegations should not prevent the appointment of a lead plaintiff.").

On October 19, 2018, the Group held a second teleconference to discuss its lead plaintiff motion, Cappucci's opposition and the adequacy of Cappucci and his counsel. *See* Declaration of Shannon L. Hopkins In Support of Reply Memorandum ("Hopkins Decl."), Ex. A, Second Joint Declaration of the Helios and Matheson Investor Group ("Second Joint Declaration"). Based on these discussions, the Group affirmed its belief that it should be appointed lead plaintiff.

Regardless, the facts before the Court and the structure of the PSLRA mandate that the Group be appointed as Lead Plaintiff in the Related Actions because it has ***nearly four times the losses*** of Cappucci and satisfies the typicality and adequacy requirements of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

## II. ARGUMENT

### A. The Helios and Matheson Investor Group Has the Largest Financial Interest

It is undisputed that the Group's financial interest is significantly larger than Cappucci's. Indeed, under all four for the *Lax/Olsten* factors, the Group far and away has the largest financial interest. *See* Dkt. No. 40, Opposition; *see also Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 U.S. Dist. LEXIS 95506, at *11 (S.D.N.Y. Nov. 24, 2008) (appointing movant with highest metrics under "all four *Lax* factors").

Recognizing his inferior losses, Cappucci compares his HMNY holdings to the individual interests of the Group's members. A larger individual interest is not a *Lax/Olsten* factor and is irrelevant because, as this Court has recognized, the PSLRA permits a "group of persons" to serve as lead plaintiff if it satisfies the same requirements of an individual. 15 U.S.C. §§77z-

1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).[2] "[T]he issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; ***indisputably, they may***." *Chahal v. Credit Suisse Grp. AG*, 2018 U.S. Dist. LEXIS 104185, at *6 (S.D.N.Y. June 21, 2018) (internal citations omitted) (emphasis added).[3] Courts in the Second Circuit and throughout the country routinely appoint groups over other movants who claim the largest individual interest. *See, e.g., Hansen v. Ferrellgas Partners, L.P.,* 2017 U.S. Dist. LEXIS 8145, at *7-8, 20 (S.D.N.Y. Jan. 19, 2017) (appointing group over individual who argued he had "the largest individual financial interest"); *Brady v. Top Ships Inc.*, 2018 U.S. Dist. LEXIS 121765, at *29-30 (E.D.N.Y. July 20, 2018) (appointing group with collective largest loss despite objection that each group member sustained a smaller loss than individual opposing movant); *Emerson v. Genocea Biosciences, Inc.,* 2018 U.S. Dist. LEXIS 22228, at *11 (D. Mass. Feb. 12, 2018) (same); *In re Aqua Metals Sec. Litig.*, 2018 U.S. Dist. LEXIS 86889, at *7-8 (N.D. Cal. May 23, 2018) (same).

### B. The Helios and Matheson Investor Group is a Proper Lead Plaintiff Group

As recognized by this Court, the PSLRA expressly permits lead plaintiff groups and the law in this District does "not necessarily require[]" a pre-existing relationship. *See* Hopkins Decl. at Ex. B, Transcript of Proceedings Before John G. Koeltl in *Lawrence v. Bank of America Corporation, et al*., Case No. 1:11-cv-6678-JGK (S.D.N.Y) ("Transcript") at pp. 5. The main catalyst behind the enactment of the PSLRA "was to prevent lawyer-driven litigation", not to refuse to appoint proper lead plaintiff groups. *Brady*, 2018 U.S. Dist. LEXIS 121765, at *18. The Group is not the product of lawyer-driven litigation, but rather a group of sophisticated investors who each retained the same law firm to litigate the Related Actions on behalf of the Class.

---

[2] Even then, Cappucci's alleged losses of $688k are only $46k, or 6%, more than Katiyar's losses of $642k.
[3] Unless otherwise stated, all emphasis is added and all citations are omitted.

### 1. The Helios and Matheson Investor Group Has Demonstrated its Cohesiveness

In evaluating the appropriateness of a group, courts consider: (1) the size of the group; (2) the relationship between members; (3) the existence of bad faith; (4) the existence of a pre-litigation relationship; (5) the involvement of the group members thus far; (6) plans for cooperation; (7) the sophistication of its members; and (8) whether the members chose counsel. *Peters v. Jinkosolar Holding Co.*, 2012 U.S. Dist. LEXIS 38489, at *19 (S.D.N.Y. Mar. 19, 2012).

The Helios and Matheson Investor Group is clearly an appropriate group under these factors. The group consists of just five members and is therefore presumptively cohesive. *Simmons v. Spencer*, 2014 U.S. Dist. LEXIS 58743, at *13 (S.D.N.Y. Apr. 24, 2014) ("group consisting of persons that have no pre-litigation relationship" acceptable as lead plaintiff if "the group is relatively small, ***such as here with only five members***, and therefore ***presumptively cohesive***.")

Cappucci argues that there are "ten constituencies" represented by the Group. Not so. Chandra Mercer assigned all rights from her interest in HMNY stock to her husband, Daniel Mercer, for the purposes of this litigation, giving Mr. Mercer full authority to litigate on her behalf and without her involvement. Taveras is the President of his company, Clean Start Enterprises Inc. ("Clean Start") and has full authority over any claims belonging to it. Dkt. No. 20 at Ex. B. Hurst is the trustee and the only person authorized to act on behalf the three trusts listed in his certifications. *Id.* Mrs. Mercer, Clean Start, and the three trusts have no say or control separate from that of Messrs. Mercer, Taveras, and Hurst, respectively. *See Seidel v. Noah Educ. Holdings, Ltd.*, 2009 U.S. Dist. LEXIS 25949, at *8 (S.D.N.Y. Mar. 9, 2009) (trustees have standing to file suit under federal securities laws on behalf of trusts); *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 108 (2d Cir. 2008) ("an assignment of claims confers legal title or ownership of those claims").

Turning to the other factors, Cappucci does not argue that the Group was formed in bad faith or that its members are unsophisticated—nor could he. The Group consists of five experienced business people with a combined forty-eight years of investing experience. *See* Joint Declaration, ¶¶3-7; *see also Janbay v. Canadian Solar, Inc.,* 272 F.R.D. 113, 119-20 (S.D.N.Y. 2010) (approving un-related group and noting sophistication of members); *Emerson,* 2018 U.S. Dist. LEXIS 22228, at *14 (sophistication of group members demonstrates ability to direct litigation and "prevent it from becoming lawyer-driven"). Further, all members of the Group separately chose to retain the same law firm, Levi & Korsinsky, by "contact[ing] the law firm … after realizing substantial losses" Joint Declaration, ¶8.

Instead, Cappucci attacks the Group's composition and its Joint Declaration. Each of Cappucci's attacks lack merit. The Joint Declaration explains the genesis of the Group—all members contacted Levi & Korsinsky, deliberated the benefits of moving as a group, considered their duties under the PSLRA, and, only then, decided to move for lead plaintiff together. *Id.,* ¶¶8-9. The Joint Declaration also details the Group's actions and plans for cooperation. Before the filing of its Motion, the Group participated in a call where contact information was exchanged and the following topics were discussed: (1) the goal of achieving the highest possible recovery for the Class; (2) duties as a lead plaintiff; (3) attorney's fees; (4) the importance of joint decision-making and collaboration; (5) a procedure to resolve disputes; and (6) plans to stay actively involved and in control of the litigation moving forward including status reports from attorneys, email communications and further telephonic meetings. *Id.,* ¶¶14-16. In fact, the Group already held a second call on October 19, 2018 for a general update and to discuss the specific allegations raised by Cappucci's opposition. *See* Second Joint Declaration at ¶¶4-8.

The Joint Declarations more than adequately demonstrate the cohesiveness of the Group, its ability to oversee counsel, and to stay informed about the progress of the case. *See Chahal*, 2018 U.S. Dist. LEXIS 104185, at *17 (joint declaration proves group members "have been active in the litigation thus far" and have a "plan to cooperate"); *Janbay*, 272 F.R.D. at 119-20 (joint declaration evidence of cohesiveness and ability to manage litigation); *Brady*, 2018 U.S. Dist. LEXIS 121765, at *25-26 (joint declaration effective despite lacking mechanism for resolving disputes); *In re MGT Capital Invs., Inc*, 2017 U.S. Dist. LEXIS 59130, at *9 (S.D.N.Y. Apr. 11, 2017) (joint declaration "attesting to [] ability and willingness to coordinate" shows ability to function cohesively); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (through declaration group showed ability to "function cohesively and to effectively manage the litigation apart from their lawyers").

Notably, Cappucci's counsel routinely argues for the appointment of unrelated lead plaintiff groups. In *In re Blue Apron Holdings, Inc. Sec. Litig.*, the Rosen Law Firm, P.A. ("Rosen") was appointed as co-lead counsel on behalf of a group that waited until ***after its motion was filed*** to submit a joint declaration and argued that "[c]ourts routinely appoint investor groups" when they participate in a conference call to discuss strategy and execute a joint declaration in support of their motion. 2017 U.S. Dist. LEXIS 207531, at *13 (E.D.N.Y. Dec. 15, 2017).[4]

---

[4] Moreover, in the last five years, Rosen has moved on behalf of groups in this District *no less than forty times*. *See* Hopkins Decl. at Ex. C, attaching ten motions where Rosen moved on behalf of unrelated groups. Additionally, the authority cited by Cappucci is inapposite. *C.f. Micholle v. Ophthotech Corp.*, 2018 U.S. Dist. LEXIS 41120, at *22 (S.D.N.Y. Mar. 13, 2018) (group provided no evidence of further communication, no discussion of fees, no details regarding member sophistication); *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 U.S. Dist. LEXIS 165842, at *5-6 (S.D.N.Y. Nov. 21, 2013) (criticizing joint declaration that was "at odds" with PSLRA because each member had same number of votes as total shares purchased); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (no evidence of continued communication among members or case management).

### C.  Cappucci's Personal Attacks are Unfounded and Irresponsible

Proceeding on internet searches, Cappucci and his counsel wantonly accuse Mercer and Taveras of being unprofessional and a violent armed robber, respectively. Rather than first conferring with undersigned counsel to determine whether these speculative attacks were true, Rosen and Bronstein, Gewirtz & Grossman, LLC ("Bronstein") made personal attacks in public filings that could have far-reaching and serious implications for Mercer and Taveras. As discussed below, both attacks lack merit.

Cappucci found a report online stating Mercer was terminated from one his positions as a contract financial advisor at Raymond James on May 23, 2017 for alleged "irregular trading." *See* Hopkins Decl. at Ex. D. Mercer contested these allegations and, contrary to Cappucci's unsupported conclusions (Cappucci Oppo., 5), they are not true, nor has Mercer ever been found to have committed fraud, violated any regulatory rules, or to have taken any actions detrimental to his clients. *See* Hopkins Decl., Ex. E; Declaration of Daniel Mercer.[5]

Cappucci selectively ignores that this Report *also* stated Mercer's alleged termination "was not sales practice related and no client's accounts were involved." Hopkins Decl., Ex. D. Moreover, Mercer left his previous employment before the Related Actions. Thus, had Cappucci read the full report, he would have known that Mercer's transactions did not involve his HMNY investment. Cappucci Oppo., 5. Finally, Mercer found similar employment in the same capacity less than one month after leaving his previous employment—further demonstrating the lack of any wrongdoing. *See* Hopkins Decl. at Ex. D.

---

[5] The case cited by Cappucci is inapposite. In *Zemel Family Tr. v. Philips Int'l Realty Corp.*, a class representative was found to be inadequate where he "initiated hundreds of mini-tender offers" in violation of §14(a) of the Securities Exchange Act by failing to disseminate material information about the offers forcing the SEC to issue cease and desist orders. 205 F.R.D. 434, 436-37 (S.D.N.Y. 2002). Mercer was not the subject of any regulatory action, was never found to have violated any laws or regulations and did not adversely affect the rights of others.

Cappucci's bald accusations against Taveras are even more egregious. Cappucci and his counsel accuse Taveras of being a felon in a public document based on nothing more than a name and a state. First, it is unclear given that Cappucci spelled Taveras' name incorrectly, which name he searched. *Compare* Cappucci Oppo., 5 ("'Tav**a**res' is representing himself…") with *id.,* 6 ("Juan Tav**e**ras"). Moreover, a records search of the name Juan Taveras for New York state returns more than 300 hits. *See* Hopkins Decl., Ex. F Cover Page of Records Search.

Again, rather than confer with counsel, Cappucci shot first and then demanded Taveras clear his name by filing a declaration stating he is not an armed robber. Taveras has since confirmed he is not the individual cited by Cappucci. *See* Hopkins Decl., Ex. G, Declaration of Juan Taveras. Had Cappucci and his counsel conducted even a cursory Google search using the information provided in the Joint Declaration, they would have learned that Taveras is not the same person they cite in their opposition, but rather a finance manager at a company in New York who "enjoys spending time with his family and giving them the best possible life."[6]

The irresponsible allegations Cappucci and his counsel made are unfounded and a far cry from *proof* that Taveras and Mercer are inadequate. *See Woburn Ret. Sys. v. Salix Pharm., Ltd.,* 2015 U.S. Dist. LEXIS 36409, at *23 (S.D.N.Y. Mar. 23, 2015) (previous allegations of breach of fiduciary duty not disqualifying as "[***m]ere allegations of wrongdoing***, without a finding established on the record, ***are insufficient to rebut [] presumption of adequacy***."); *Sofran* v. *LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing proof required by PSLRA). If anything, Cappucci and his counsel's unfounded attacks and lack of attention to detail are cause for serious concern over their ability to properly represent the Class.

---

[6] Hopkins Decl. at Exs. H-I, Google search using Juan Taveras and Baron Nissan; Baron Nissan Profile of Mr. Taveras.

### D. Cappucci's Motion is Lawyer-Driven

The structure of Cappucci's proposed counsel and unfounded attacks are evidence of lawyer-driven litigation. Cappucci offers no explanation for requesting that the Court appoint two law firms as lead counsel. *See* Hopkins Decl., Ex. B Transcript, pp. 18 (appointment of multiple law firms "runs the risk of substantial multiplication of cost and consequent diminution of stockholder recovery."); *Yousefi v. Lockheed Martin Corp.,* 70 F. Supp. 2d 1061, 1071-72 (C.D. Cal. 1999) (appointing one law firm would better serve PSLRA "to enable plaintiffs to control counsel"). Moreover, Cappucci's Opposition proves that his counsel are driving the litigation by making personal attacks without regard to their accuracy in an effort to be appointed lead counsel. Indeed, it is unclear whether Cappucci even knows that his counsel made such unfounded attacks. Cappucci's motion should be denied for these additional reasons.

### III. Conclusion

For the reasons above and those set out in the Group's moving and opposition papers, it respectfully requests that the Court appoint it as Lead Plaintiff, approve its selection of Levi & Korsinsky as lead counsel, and deny Cappucci's motion.

DATED: October 22, 2018          Respectfully Submitted,

**LEVI & KORSINSKY LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

*Counsel for Movant and [Proposed] Lead Counsel for the Class*

## CERTIFICATE OF FORMATING

I, Shannon L. Hopkins, hereby certify that the foregoing brief complies with the Individual Practices of Judge John G. Koeltl, in that it contains 2,800 words or fewer, contains a table of contents and authorities, and is double spaced.

DATED: October 22, 2018

/s/Shannon L. Hopkins
Shannon L. Hopkins

## CERTIFICATE OF SERVICE

I, Shannon L. Hopkins, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 22nd day of October 2018.

*/s/Shannon L. Hopkins*
Shannon L. Hopkins