**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE HELIOS AND MATHESON ANALYTICS, INC. SECURITIES LITIGATION | Case No. 1:18-CV-06965-JGK <br><br> <u>**CLASS ACTION**</u> |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED**
<u>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Dated: December 11, 2020

**LEVI & KORSINSKY, LLP**

Shannon L. Hopkins (SH-1887)
  shopkins@zlk.com
Gregory M. Potrepka (GP-1275)
  gpotrepka@zlk.com
Andrew W. Rocco (admitted *Pro Hac Vice*)
  arocco@zlk.com
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ............................................................................. 1

II.     NATURE AND HISTORY OF THE ACTION ................................................... 3

III.    THE PROPOSED SETTLEMENT..................................................................... 6

IV.     ARGUMENT ....................................................................................................... 7

A.      The Proposed Settlement Warrants Preliminary Approval................................ 7

1.      Standards For Preliminary Approval Of Class Action Settlements ................................ 7

2.      Rule 23(e)(2)(A): Lead Plaintiff And Lead Counsel Adequately Represented The Class ...................................................................................................................... 9

3.      Rule 23(e)(2)(B): The Proposed Settlement Was The Result Of Fair, Informed Arm's-Length Negotiations.............................................................................. 11

4.      Rule 23(e)(2)(C): The Proposed Settlement Provides Substantial Relief for the Class. 11

a.      The Settlement Is Adequate, And Outweighs The Risks, Delay, And Expense Of Further Litigation ................................................................................. 12

b.      The Process For Distributing Relief To The Class Is Effective................................. 15

c.      The Anticipated Request For Attorneys' Fees Is Reasonable ................................... 16

5.      Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably............................ 17

B.      The Proposed Class Should Be Certified.......................................................... 17

1.      The Settlement Class Meets The Requirements Of Rule 23(a) ..................................... 17

2.      Rule 23(b)(3)'s Requirements Are Satisfied.................................................................. 19

C.      The Proposed Form Of Notice And Notice Schedule Should Be Approved................. 20

1.      Notice By Postcard And Publication Is Adequate And Satisfies Due Process ............. 20

2.      The Proposed Schedule Is Fair, Adequate, and Reasonable .......................................... 22

V.      CONCLUSION.......................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 19

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ...................................................................... 20

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. 2010) (Koeltl, J.) ........................................... 19

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) .................................................................... 18

*Chin v. RCN Corp.*,
  2010 WL 3958794 (S.D.N.Y. 2010) ................................................................ 9

*Christine Asia Co. v. Jack Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. 2019) .............................................................. 10

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. 2014) .............................................................. 16

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................. 8

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. 2015) .............................................................. 7

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................ 11, 12, 22

*In re Banco Bradesco S.A. Secs. Litig.*,
  2019 WL 6114713 (S.D.N.Y. 2019) .............................................................. 22

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. 2011) .............................................................. 11

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) ..................................................................... 14

*In re Electrobras Sec. Litig.*,
  Case No. 15-cv-5754-JGK (S.D.N.Y. 2018) (Koeltl, J.) .............................. 16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. 2007) .............................................................. 12

*In re Facebook, Inc.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................... 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ................................................................. 18

*In re Giant Interactive Group, Inc. Securities Litigation*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................ 16

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 12

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .......................................................... 19

*In re JPMorgan Chase & Co. Sec. Litig.*,
    2016 WL 11590485 (S.D.N.Y. 2016) ................................................ 16

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
    2018 WL 3475465 (S.D.N.Y. 2018) .................................................... 8

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. 2009) ............................................ 17, 20

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................ 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................ 10

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    Case No.: 12-cv-5724-JGK (S.D.N.Y. 2014) (Koeltl, J.) ................... 22

*In re Parmalat Sec. Litig.*,
    2008 WL 3895539 (S.D.N.Y. 2008) .................................................... 18

*In re Platinum & Palladium Commod. Litig.*,
    2014 WL 3500655 (S.D.N.Y. 2014) ..................................................... 9

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................... 19

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................ 14

*In re Sanofi-Aventis Sec. Litig.*,
    293 F.R.D. 449 (S.D.N.Y. 2013) ........................................................ 19

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. 2020) ...................................... 12, 13, 15

*In re Veeco Instruments Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. 2007) .................................................... 13

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   2018 WL 6333657 (S.D.N.Y. 2018) ....................................................... 15

*In re Vivendi Univ., S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................... 18

*Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. 2019) ......................................................... 9

*Lomeli v. Sec. & Inv. Co. Bahrain*,
   546 F. App'x. 37 (2d Cir. 2013) ............................................................. 22

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................... 16

*Mayhew v. KAS Direct, LLC*,
   2018 WL 3122059 (S.D.N.Y. 2018) ......................................................... 7

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
   2016 WL 7409840 (S.D.N.Y. 2016) ................................................. 18, 19

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ........................................................... 9

*Pa. Pub. Sch. Emples.' Ret. Sys. v. Bank of Am. Corp.*,
   318 F.R.D. 19 (S.D.N.Y. 2016) ............................................................. 12

*Palacio v. E\*Trade Fin. Corp.*,
   2012 WL 1058409 (S.D.N.Y. 2012) ....................................................... 11

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
   2010 WL 532960 (S.D.N.Y. 2010) ......................................................... 17

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V., et al.*,
   Case No. 1-13-cv-5696-JGK (S.D.N.Y. 2016) (Koeltl, J.) ....................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................... 7, 12, 20

*Wilson v. LSB Indus.*,
   2019 WL 3542844 (S.D.N.Y. 2019) ....................................................... 22

**Statutes**

15 U.S.C. §77z-1(a)(7)................................................................................. 22

15 U.S.C. §78u-4(a)(4) ............................................................................... 17

**Other Authorities**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2019 Review and Analysis*, Cornerstone Research ............................................................................................... 14

**Rules**

Fed. R. Civ. P. 23(e) .............................................................................................. passim

Lead Plaintiff Helios and Matheson Investor Group, comprised of George Hurst, Marcus Washington, Daniel Mercer, Juan Taveras, and Amit Katiyar (collectively, "Plaintiffs" or "Lead Plaintiff"), submits this Memorandum of Law in support of its unopposed motion for entry of the agreed-upon order submitted herewith (the "Preliminary Approval Order") preliminarily approving the proposed class action settlement and providing for notice to the Class.[1]

## I.  PRELIMINARY STATEMENT

Following two years of highly-contested litigation and a petition for Chapter 7 liquidation filed by Helios and Matheson Analytics, Inc. ("Helios" or the "Company"), the Parties agreed to resolve all claims in this securities class action against Defendants Theodore Farnsworth, Stuart Benson, and Mitch Lowe (collectively the "Individual Defendants") for an all-cash recovery of $8,250,000 (the "Settlement Amount").

The Settlement is the result of extensive investigation and arm's-length negotiations among experienced counsel, and was the personal proposal of a highly-respected mediator, David Murphy, Esq., of Phillips ADR. The Settlement was reached only after vigorous litigation efforts including three complaint amendments, opposition briefing related to two motions to dismiss, a fully-briefed motion for relief from the PSLRA discovery stay, a presentation to the Individual Defendants' insurance carriers, multiple rounds of mediation briefing, a full-day mediation before Mr. Murphy, and vigorous subsequent negotiations facilitated by the mediator. Lead Plaintiff's

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated December 11, 2020 (the "Stipulation). Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted. "Ex." are exhibits to the Declaration of Shannon L. Hopkins in Support of Plaintiffs' Unopposed Motion for Approval of Class Action Settlement ("Hopkins Decl."), filed herewith. The Exhibits to the Stipulation are attached to the Hopkins Decl. at Exhibits. A-B.

investigation included, among other things, review and analysis of: (i) documents filed publicly by Helios with the SEC; (ii) publicly available information concerning Helios and/or the Individual Defendants, including Company press releases, news articles, and video recorded interviews; (iii) research reports issued by financial and industry analysts concerning Helios; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning MoviePass's operations; (v) docket entries from various court proceedings concerning Helios and the Individual Defendants, including detailed pleadings based on non-public information and other items filed in the Bankruptcy; (vi) interviews conducted with former employees; (vii) reports prepared by Plaintiffs' damages experts in connection with the mediation; and (viii) the applicable law governing the claims and potential defenses in this action.

Given this extensive investigation, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims and the fairness of the Settlement. Lead Plaintiff submits that the Settlement ultimately should be approved by the Court as it fairly, reasonably, and adequately balances Plaintiffs' objective of securing the highest possible monetary recovery for the Class against the significant risk that it could receive a smaller recovery, or no recovery, if the Action continued. At this time, Lead Plaintiff seeks entry of the Preliminary Approval Order which will start the process for obtaining final approval of the settlement by, among other ways:

- Preliminarily approving the terms of the Settlement set forth in the Stipulation;

- Certifying the Class and appointing Lead Plaintiff as class representative and Lead Counsel as class counsel, for settlement purposes only;

- Approving retention of the Claims Administrator and providing up to $200,000 in Notice and Administration Expenses, without further order of the Court;

- Approving the form, content, and method of dissemination of the Notice, Claim Form, Postcard Notice, and Publication Notice (attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order) as the best notice practicable under the circumstances and complying with due process, Rule 23, and the PSLRA;

- Setting a schedule for: (i) providing notice to the Class; (ii) Class members to submit a claim, object to any part of the settlement, or request exclusion therefrom; (iii) submitting papers in support of final approval and Lead Counsel's anticipated request for fees and expenses; (iv) the Settlement Hearing, at which the Court will consider final approval of the Settlement, as well as approval of the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses, including reimbursement of costs to Plaintiffs pursuant to the PSLRA.

## II.   NATURE AND HISTORY OF THE ACTION

This Action commenced on August 2, 2018 when Jeffrey Chang, through his counsel, Levi & Korsinsky, LLP ("L&K"), filed the original securities class action complaint. ECF 1. The original complaint and every subsequent complaint in this Action assert violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, on behalf of all persons and entities that purchased or otherwise acquired shares of publicly traded common stock of Helios between August 15, 2017 and July 26, 2018, inclusive, and who were damaged thereby.[2] This Action arises out of Defendants' alleged material

---

[2] Excluded from the Class are: (i) Defendants; (ii) their immediate family members; (iii) any person who was an officer or director of Helios and/or MoviePass during the Class Period; (iv) any firm, trust, corporation, or other entity in which a Defendant has or had a controlling interest; and (v) the legal representatives, affiliates, heirs, successors in-interest, or assigns of any of such excluded person or entity.  Also excluded from the Class will be any Person who or

misrepresentations concerning the Company's prospects and operations subsequent to announcing, on August 15, 2017, that Helios acquired a majority position in MoviePass, a movie ticket subscription service. A substantially similar action was filed on August 10, 2018. *See Braxton v. Benson, et al.*, Case No. 18-7242 (S.D.N.Y). On November 16, 2018, after full briefing and oral argument, the Court consolidated *Braxton* with this Action, appointed Plaintiffs as Lead Plaintiff, and approved Lead Plaintiff's selection of L&K as Lead Counsel. ECF 53-54. The Court also amended the case caption of the consolidated Action to *In re Helios and Matheson Analytics, Inc. Securities Litigation*. ECF 56.

Lead Plaintiff filed the first Amended Class Action Complaint on January 4, 2019 ("FAC"). ECF 60. Pursuant to the Court's initial pleading schedule, if Defendants moved to dismiss the FAC, Lead Plaintiff was granted leave to file a second amended complaint in lieu of responding to the motion. ECF 56. After Defendants moved to dismiss the FAC on February 25, 2019 (ECF 67), Lead Plaintiff chose to file a Second Amended Class Action Complaint ("SAC"). ECF 74. Defendants filed a motion to dismiss the SAC on May 24, 2019. ECF 79. On July 15, 2019, Lead Plaintiff opposed Defendants' motion to dismiss and, concurrently, moved for leave to supplement the SAC with recently reported news that could not have reasonably been obtained prior to the filing of the SAC. ECF 83-84. On August 6, 2019, the Court granted Lead Plaintiff leave to file the operative third amended complaint ("TAC"). ECF 91.

Lead Plaintiff filed the TAC on August 16, 2019. ECF 92. Defendants moved to dismiss the TAC on September 11, 2019, which Lead Plaintiff opposed on September 27, 2019. ECF Nos. 93-96. On October 11, 2019, Defendants filed a reply in further support of their motion to dismiss. ECF 100.

---

which timely and validly seeks exclusion from the Class. Stipulation ¶1(g).

On January 28, 2020, Helios filed a voluntary Chapter 7 Petition in the United States Bankruptcy Court for the Southern District of New York, captioned *In re Helios and Matheson Analytics, Inc., a/k/a MovieFone, et al.*, Case No. 20-10242-SMB (the "Bankruptcy"). Defendants advised the Court of the Bankruptcy filing on January 30, 2020, and the Court ordered that the Action be stayed against Company the same day.  ECF 101-02.  Alan Nisselson was soon appointed Trustee of the estate and began "pursuing breach of fiduciary duty and other claims against certain individuals[.]" Bankr. Dkt. 82.

As shareholders, Lead Plaintiff and the Class are unsecured creditors of the Bankruptcy estate. In pursuing his "fiduciary duty and other claims," the Trustee wrested control over similar claims asserted in a derivative action that had previously been filed by a Helios shareholder. *See In re Helios and Matheson Analytics, Inc. Derv. Litig.*, Case No. 1:19-cv-2863-JGK (S.D.N.Y.). This change in leadership threatened to prejudice Lead Plaintiff who was subject to the PSLRA's automatic discovery stay. Unlike the derivative action which was subject to a court-ordered discovery stay (and thus, proceeding in the same posture as this Action), *id.* at Dkt. No. 29, the Trustee's investigation relied on material, non-public Company documents including emails, board-level documents, and internal projections. Since Lead Plaintiff's claims competed for overlapping and diminishing directors' and officers' liability insurance coverage with the Trustee's fiduciary duty claims, Lead Plaintiff's ability to benefit from that coverage was jeopardized because of the informational disadvantage.

On June 2, 2020, Lead Plaintiff moved the Court for limited relief from the PSLRA discovery stay seeking access to non-public documents relied upon by the Bankruptcy Trustee, including documents that would be relied upon by the Trustee in his Original Complaint filed against the Individual Defendants (among others), on June 5, 2020. ECF 109-10. On June 16, 2020,

the Individual Defendants filed an opposition to Lead Plaintiff's motion, and Lead Plaintiff filed a reply in further support of its motion on June 23, 2020. ECF Nos. 113, 116-17. On July 13, 2020, the Individual Defendants filed a sur-reply in further opposition to Lead Plaintiff's motion for limited relief from the PSLRA. ECF 121.

On June 16, 2020, the Individual Defendants filed a notice of supplemental authority in support of their motion to dismiss the TAC.  ECF 114.  On June 19, 2020, Lead Plaintiff filed a notice of supplemental authority in further opposition to the motion to dismiss the TAC.  ECF 115.

## III.   THE PROPOSED SETTLEMENT

While Defendants' motion to dismiss the TAC was pending, and after the filing of the Bankruptcy, the Parties agreed to participate in mediation and engaged Mr. Murphy of Phillips ADR. Defendants also invited the Trustee to participate.

This tripartite mediation began with both Lead Plaintiff and the Trustee presenting to Defendants' insurance carriers regarding their respective settlement positions. Lead Plaintiff, through counsel, gave its presentation on July 30, 2020.  On August 19, 2020, Plaintiffs, Defendants, and the Trustee submitted detailed opening mediation statements to Mr. Murphy and with each other. In connection, Lead Plaintiff retained the assistance of damages consultants to evaluate the competing claims for damages by Lead Plaintiff and by the Trustee. On September 2, 2020, the Parties submitted replies to their counterparts' opening mediation statements. Further, various insurance carriers submitted position statements on September 2, 2020, expressing their views regarding coverage, if any, for the claims asserted in the TAC and by the Trustee, given the serious allegations in both actions. On September 16, 2020, Lead Plaintiff's Counsel and counsel for the Individual Defendants engaged in a full-day mediation session before Mr. Murphy. Counsel

for the Bankruptcy Trustee and various insurance carriers also attended the mediation session.  The mediation session ended without agreement.

Additional negotiations continued with Mr. Murphy's assistance during the following weeks.  On October 5, 2020, the Parties agreed to Mr. Murphy's personal double-blind proposal to resolve the Action for $8,250,000 in cash to be paid by the Individual Defendants or the Individual Defendants' insurers on behalf of the Individual Defendants.  Subsequently, the Parties continued negotiations of the Settlement terms and conditions, entering into the Stipulation and exhibits thereto on December 11, 2020, which provide that the Settlement will be distributed to Authorized Claimants in accordance with a fair and reasonable plan of allocation to be approved by the Court. Lead Plaintiff now seeks preliminary approval of this Settlement.

## IV.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

#### 1.    Standards For Preliminary Approval Of Class Action Settlements

Rule 23(e) requires judicial approval of any class-wide settlement.  Fed. R. Civ. P. 23(e). Public policy strongly favors settlement, "particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, *4 (S.D.N.Y. 2015) ("[T]here is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

A court's review of a proposed class action settlement is "a two-step process[.]"  *Mayhew v. KAS Direct, LLC*, 2018 WL 3122059, *7 (S.D.N.Y. 2018). First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice to the class, Fed. R. Civ. P. 23(e)(1); and second, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, Fed R. Civ. P. 23(e)(2).

Rule 23(e) was recently amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should issue given the likelihood that the court will be able to find the settlement to be fair, reasonable, and adequate, at final approval. Fed. R. Civ. P. 23(e)(1)(B); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2018 WL 3475465, *1 (S.D.N.Y. 2018) ("This analysis is a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."). Final approval requires consideration of the following factors:[3]

    A.    have the class representatives and class counsel adequately represented the class;

    B.    was the proposed settlement negotiated at arm's length;

    C.    is the relief provided for the class adequate, taking into account:

        i.    the costs, risks, and delay of trial and appeal;

        ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

        iv.    any agreement required to be identified under Rule 23(e)(3);[4] and

---

[3] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors); *see also* Fed. R. Civ. P. 23(e)(2) Advisory Committee Note to 2018 Amendments (amendments are not intended to "displace" factors previously adopted by the Courts of Appeals).

[4] In connection with the Settlement, the parties entered a Supplemental Agreement setting forth conditions under which the Individual Defendants shall have the sole option to terminate the Settlement and render the Stipulation null and void. This option rests on the event that requests for exclusion from the Class exceed certain agreed-upon terms. This Supplemental Agreement shall remain confidential and not filed with the Court unless a dispute of the terms arises or disclosure is ordered by the Court. The confidentiality of the Supplemental Agreement is a standard practice

D.      does the proposal treat class members equitable relative to each other.

Fed R. Civ. P. 23(e)(2).

This determination considers the "negotiating process leading up to the settlement, i.e., procedural fairness," contemplated by Rules 23(e)(2)(A) through (B), "as well as the settlement's substantive terms, i.e., substantive fairness" enumerated in Rules 23(e)(2)(C) through (D). *In re Platinum & Palladium Commod. Litig.*, 2014 WL 3500655, *11 (S.D.N.Y. 2014). Every applicable Rule 23(e)(2) factor is satisfied here.

### 2.      Rule 23(e)(2)(A): Lead Plaintiff And Lead Counsel Adequately Represented The Class

Lead Plaintiff's hard-fought litigation efforts have adequately represented the Class. Lead Plaintiff demonstrated its adequacy by moving for appointment as Lead Plaintiff so that it could seek to maximize the Class's recovery. *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, *5 (C.D. Cal. 2019) (granting approval because "[w]here plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between" representatives and the class). Lead Plaintiff also adequately represented the class by selecting qualified counsel. *See Chin v. RCN Corp.*, 2010 WL 3958794, *3 (S.D.N.Y. 2010) (class settlement "procedurally fair" where plaintiff selected "experienced and capable" counsel). Here, Lead Plaintiff is represented by L&K, an experienced firm skilled in securities litigation with a long and successful track record in such

---

in securities litigation to reduce the possibility of groups being incentivized to collectively opt-out in hopes of leveraging an individual settlement. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'"). The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the parties.

cases. Ex. 2. Bragar, Eagel & Squire P.C. aided L&K with the investigation and contributed to the prosecution of the claims, including by providing counsel related to the Bankruptcy. Ex. 3. Lead Counsel believes that the achieved Settlement is an excellent result for the Class given the attendant risks in the ongoing litigation and recommends that the Settlement be preliminarily approved. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]").

Lead Plaintiff's Counsel also adequately represented the Class by, *inter alia*, thoroughly investigating the allegations in the TAC for over two years before reaching the Settlement. This investigation included, among other things, an extensive review and analysis of all public filings and other available information concerning the Defendants; interviews with third-party witnesses; preparation of three detailed complaints; briefing on two motions to dismiss; consultation with damages and market efficiency experts; and review and analysis of the court filings in numerous judicial proceeds, including the Bankruptcy.

Given intense interest from shareholders and consumers in the Company's business, the Individual Defendants' frequent participation in interviews, the significant rise of Helios's stock price, and the rapid descent of the Company culminating in the Bankruptcy, there was a large trove of information that became publicly available to review concerning the TAC's allegations. Accordingly, Plaintiffs' Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately consider the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy. *See, e.g.*, *Christine Asia Co. v. Jack Yun Ma*, 2019 WL 5257534, *11 (S.D.N.Y. 2019) ("counsel possessed a record sufficient to permit evaluation of the merits of Plaintiff's claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes

of settlement"); *see also In re China Sunergy Sec. Litig.*, 2011 WL 1899715, *4 (S.D.N.Y. 2011) (although no "formal discovery" occurred, counsel's investigation permitted fair assessment of settlement).

### 3.   Rule 23(e)(2)(B): The Proposed Settlement Was The Result Of Fair, Informed Arm's-Length Negotiations

A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014). The Settlement is entitled to this presumption because it was achieved after arm's-length negotiations by well-informed and experienced counsel on both sides.[5]

Moreover, the Settlement was facilitated by a highly experienced mediator who reviewed detailed submissions that briefed a full spectrum of issues including the Action's merits, damages, collectability, and insurance coverage defenses. *Palacio v. E\*Trade Fin. Corp.*, 2012 WL 1058409, *1 (S.D.N.Y. 2012) ("The assistance of an experienced class action mediator . . . reinforces that the Settlement Agreements are non-collusive."); *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V., et al.*, Case No. 1-13-cv-5696-JGK at Dkt. No. 131 (S.D.N.Y. 2016) (Koeltl, J.) (settlement procedurally fair where "negotiated with the assistance of an experienced mediator"). The procedurally fair manner in which this Settlement was reached strongly favors approval.

### 4.   Rule 23(e)(2)(C): The Proposed Settlement Provides Substantial Relief for the Class

Rule 23(e)(C) considers whether "the relief provided for the class is adequate[.]" There are three factors considered by courts in determining if the relief is adequate. The Settlement satisfies each factor.

---

[5] Defendants were represented by sophisticated counsel at Greenberg Traurig, LLP.

### a.  The Settlement Is Adequate, And Outweighs The Risks, Delay, And Expense Of Further Litigation

In deciding whether a proposed settlement is adequate there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart*, 396 F.3d at 119. When reviewing a settlement's reasonableness, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, *4 (S.D.N.Y. 2007).

*First*, there is no question that continued class action litigation is costly, risky, and lengthy. Securities class actions are "a breed of litigation that courts have recognized as 'notably difficult and notoriously uncertain.'" *Pa. Pub. Sch. Emples.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y. 2016); *see also Advanced Battery*, 298 F.R.D. at 177 ("[s]ecurities class actions present hurdles to proving liability that are particularly difficult").

When the Settlement was reached, Defendants' motion to dismiss was ripe for adjudication and could have resulted in a complete dismissal. Moreover, Plaintiffs still had to achieve class certification,[6] withstand summary judgment and pre-trial motions, prepare for and obtain a verdict in a lengthy jury trial on liability, litigate post-trial motions and bifurcated trials on damages, and withstand lengthy appeals. These hurdles are no small task and would take years. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, *5 (S.D.N.Y. 2020) ("Achieving a litigated verdict would have required substantial additional time and expense.")

---

[6] *See also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.")

Defendants emphatically challenged the sufficiency of Lead Plaintiff's claims, including that Defendants' misstatements were not materially misleading, and that Defendants did not act with the requisite scienter. At class certification, summary judgment, and trial Defendants would have undoubtedly argued that the alleged misstatements were not the cause of Lead Plaintiff's losses, and that Class members suffered no damages. Risks like these militate in favor of settlement, because "it is difficult to predict" how juries will decide difficult issues like scienter and damages in complex securities class actions. *In re Veeco Instruments Sec. Litig.*, 2007 WL 4115809, *9 (S.D.N.Y. 2007). Even on the best facts, loss causation and damages issues are often an unpredictable and expensive "battle of the experts." *Signet Jewelers*, 2020 WL 4196468 at *11.

***Second***, while Plaintiffs are confident in their merits' arguments, success is never guaranteed. Moreover, ***in this case in particular***, Lead Plaintiff cannot be certain that even success on the merits would have obtained a better result for the Class than the Settlement given the significant risks Lead Plaintiff faced collecting a future settlement or a judgment from alternative sources. As unsecured creditors in the Bankruptcy, it is uncertain whether shareholders will recover from the estate. Moreover, when the parties reached the Settlement, the Individual Defendants possessed limited insurance coverage. Claimants against the policy proceeds included not only the Class, but also the Trustee who was armed with the Company's books and records. Claimed damages in both this Action and the Trustee's action far exceeded the available coverage. Moreover, Defendants also face ongoing and costly proceedings initiated by regulators including the New York Attorney General, District Attorneys in California, and the Securities Exchange Commission. *See* Bankr. Dkt. 1.

If the parties continued with discovery, class certification, expert discovery, summary judgment briefing, trial, and appeals (all of which pose significant risk), Defendants would have

likely exhausted **all** of the coverage—assuming coverage was not disclaimed. *C.f., In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 507 (W.D. Pa. 2003) ("because of the nature of the Class's claims (*i.e.*, securities violations involving alleged intentional fraud) the insurer had a potentially viable argument for excluding coverage."). Even if the case settled before trial, there was no guarantee that any insurance coverage would remain, given the threat posed by the Trustee's action, and the ongoing regulatory and Bankruptcy proceedings.

**Third**, the Settlement provides an immediate cash recovery of **$8,250,000**. This favorable result is well-within reasonableness to warrant preliminary approval. Lead Plaintiff's damages expert estimates that if Lead Plaintiff fully prevailed on its claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which would be hotly contested) on *eight* alleged corrective disclosures—i.e., Lead Plaintiff's **best case scenario**—the maximum estimated theoretical damages would be approximately $367.9 million. Hopkins Decl. at ¶7. Under Lead Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately a 2.2% recovery. *C.f.*, Ex.4 Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2019 Review and Analysis*, Cornerstone Research, at Appendices 1 (median 2019 settlements nationwide were $11.5 million); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approval granted because "recovery of approximately 1.3%" was "in line with the median ratio of settlement size to investor losses").

However, a full damages recovery was unlikely. Defendants made colorable arguments that investors who purchased Helios stock after the first alleged disclosure on October 11, 2017 could face loss causation and damages challenges related to the truth on the market. On October 11, 2017, the Company issued risk factors related to MoviePass's business model. ECF 92 at

¶¶357-63. If total damages were limited to those caused by the October 11, 2017 corrective disclosure (approximately $55.6 million), the Settlement represents a *14.8*% recovery. *See* Hopkins Decl. at ¶8; *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2018 WL 6333657, *3 (S.D.N.Y. 2018) ("possibility that at least some of the corrective disclosures would not have survived" a dispositive motion, thereby reducing maximum damages, demonstrated settlement's reasonableness).

The uncertainties of continued litigation and the Bankruptcy posed a considerable risk that the Class would receive smaller recovery or no recovery at all. While the Settlement of $8,250,000 would be a good recovery in any securities litigation case because it provides immediacy and certainty of recovery while eliminating all risks and costs of continued litigation, it is particularly outstanding here given the Chapter 7 Bankruptcy.

### b. The Process For Distributing Relief To The Class Is Effective

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the method of distributing relief to the class. The Settlement, like most securities class action settlements, will be distributed with the assistance of an established and experienced claims administrator, JND Legal Administration. *See, e.g.*, *Signet*, 2020 WL 4196468, at *13 ("JND, an independent company with extensive experience handling the administration of securities class actions, will review and process the Claims under the supervision of Lead Counsel[.]"). JND will employ a well-established securities class action distribution process. Namely, a potential class member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form that provides simple instructions to claimants concerning the necessary information they must present to process their claims and the deadlines by which they must do so. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate in the Settlement by, among other ways, calculating their respective "recognized loss"

based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶25.

After the Settlement reaches its Effective Date (Stipulation at ¶38) and the passing of all applicable deadlines, Authorized Claimants will be issued checks. If there are un-claimed funds after the initial distribution, the Claims Administrator will conduct further distributions until it is no longer feasible and economical to do so.

### c.    The Anticipated Request For Attorneys' Fees Is Reasonable

As set forth in the Notice, Lead Counsel intends to seek an award of attorney's fees pursuant to the common fund doctrine of no more than 25% of the Settlement Fund and out-of-pocket expenses not to exceed $166,500,[7] inclusive of Lead Counsel's anticipated request for compensation of Lead Plaintiff's costs and expenses. A fee of up to 25% is well within the range of attorneys' fee awards granted in comparable securities class actions, if not comparably lower. *See, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, 2016 WL 11590485, *2 (S.D.N.Y. 2016) (granting fee of 25% of $150 million settlement); *In re Electrobras Sec. Litig.*, Case No. 15-cv-5754-JGK, Dkt. No. 142 (S.D.N.Y. 2018) (Koeltl, J.) (awarding 25% of settlement fund); *see also City of Providence v. Aeropostale, Inc*., 2014 WL 1883494, *10 (S.D.N.Y. 2014) (awarding 33% of $15 million settlement); *In re Giant Interactive Group, Inc. Securities Litigation*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding 33-1/3% of $1.25 million settlement).  Further, the Court will decide the reasonableness of Lead Counsel's forthcoming motion for attorneys' fees and expenses after Class Members have had opportunity to object.

---

[7] The Preliminary Approval Order also provides that Lead Counsel be able to pay up to $200,000 for the Claims Administrator's expenses without further Court order.

### 5.      Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any segment of the Class. Rather, all members of the Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[8] The proposed Settlement fairly and reasonably allocates benefits amongst the Class Members. All Settlement Class members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. Notice at 9-16. *See, e.g., In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

### B.      The Proposed Class Should Be Certified

Lead Plaintiff requests that the Court preliminarily certify the Settlement Class for purposes of Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts "acknowledge[] the propriety of certifying a class solely for purposes of a class-action settlement."  *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, *27 (S.D.N.Y. 2009). The Class readily satisfies Rules 23(a) and (b)(3).

### 1.      The Settlement Class Meets The Requirements Of Rule 23(a)

Rule 23(a) requires Lead Plaintiff demonstrate numerosity, commonality, typicality, and adequacy of representation.  The Class satisfies each of these requirements.

---

[8]  Plaintiffs intend to request reimbursement of not more than $5,000 each, pursuant to 15 U.S.C. §78u-4(a)(4). Such awards "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."  *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 WL 532960, *1 (S.D.N.Y. 2010).

*First*, the Rule 23(a)(1) requirement is met because Class Members are likely to number in the thousands. *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2016 WL 7409840, *2 (S.D.N.Y. 2016) (class of forty is presumptively numerous). Further, "in securities fraud class actions" numerosity is shown by evidence "that a large number of shares were outstanding and traded during the relevant period." *In re Facebook, Inc.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). There were over 421 million shares of Helios outstanding prior to the 1-for-250 reverse stock split effectuated on July 25, 2018.  ECF 92; ¶548(g).  Therefore, joinder of all class members would be impracticable and numerosity satisfied.

*Second*, the Rule 23(a)(2) commonality requirement is also satisfied. Under Fed. R. Civ. P. 23(a)(2), "questions of law or fact" must be "common to the class," but not every issue must be identical for every class member, it is enough that there is "some unifying thread[.]" *In re Vivendi Univ., S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007).  Lead Plaintiff's claims assert questions of law and fact common to all Class Members' claims, including whether: (i) Defendants' statements were materially false; (ii) Defendants had the requisite state of mind; (iii) Helios's stock price was artificially inflated; and, (iii) Class Members suffered economic harm.  *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (common questions where "the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *In re Parmalat Sec. Litig.*, 2008 WL 3895539, *4 (S.D.N.Y. 2008) (commonality requirement is "applied permissively").

*Third*, Plaintiffs' claims are "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), because "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Lead Plaintiff asserts the same legal

theories and would offer the same proof as any other Class Member.  Thus, Defendants' alleged misconduct similarly affected Lead Plaintiff and all other Class members which satisfies the typicality requirement. *N.J. Carpenters Health Fund*, 2016 WL 7409840, at *4.

***Fourth***, Rule 23(a)(4)'s adequacy requirement is satisfied because there are no conflicts of interest between Lead Plaintiff and Class members, and Lead Plaintiff's counsel are experienced and qualified.  *N.J. Carpenters Health Fund*, 2016 WL 7409840, at *5-7.  All Class members, including Lead Plaintiff, purchased shares of Helios securities based on the same misstatements and omissions and suffered the same type of alleged damages, and thus share a "common goal of maximizing recovery." *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006). Additionally, Lead Plaintiff's Counsel is experienced and capable, having served as lead or co-lead counsel in numerous securities class actions and obtaining substantial recoveries.  *See* Exs. 2-3.

### 2.      Rule 23(b)(3)'s Requirements Are Satisfied

The proposed Class also satisfies Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and a class action is "superior" to any other method of litigation.  Fed. R. Civ. P. 23(b)(3);[9] *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007). "Predominance is a test readily met in certain cases alleging…securities fraud," and that is no different here.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  As discussed above, common questions of law and fact—such as whether Defendants made materially false and misleading statements that artificially inflated Helios' stock price—abound.  *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) (whether

---

[9] As this is a settlement in lieu of trial, the Rule 23(b)(3)(D) inquiry is not required. *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, *2 (S.D.N.Y. 2010) (Koeltl, J.).

statements were materially misleading is "subject to generalized proof, and thus applicable to the class as a whole").

Further, a class action is superior to any alternative method for resolving these claims. *See* Fed. R. Civ. P. 23(b)(3). Here, the large number of geographically dispersed Class members, the complex nature of securities class actions, and the high costs associated with individualized actions make it doubtful that most Class members would be able to obtain relief without class status.  *See, e.g.*, *Marsh & McLennan*, 2009 WL 5178546, at *12 ("class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" gives "limited interest in individually controlling the prosecution or defense of separate actions").  Further, Class members who desire to pursue individualized actions have the option to opt-out of the Settlement.

In sum, the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3) and the Court should certify the Class for the purposes of settlement only.

**C.     The Proposed Form Of Notice And Notice Schedule Should Be Approved**

**1.     Notice By Postcard And Publication Is Adequate And Satisfies Due Process**

The proposed Notice, Postcard Notice, and Publication Notice (Exhibits A-1, A-3, and A-4 to the Stipulation, respectively), satisfy due process, the federal rules, and the PSLRA.  Rule 23 directs that the notice be "the best notice that is practicable," and that it be made "in a reasonable manner[.]" Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e). This is the same requirement as the due process clause. *Arbuthnot v. Pierson*, 607 F. App'x 73, 73-74 (2d Cir. 2015) (adequacy of notice "either the Due Process Clause or the Federal Rules is measured by reasonableness."). All that is required is that the notice "fairly apprise" Class Members "of the terms of the proposed settlement and of the options that are open to them[.]"  *Wal-Mart*, 396 F.3d at 114.

The thorough notice program proposed here satisfies these standards.  As discussed above, Lead Plaintiff seeks approval to retain JND as the Claims Administrator.  JND is an experienced claims administrator that will oversee and administer the notice and claims process.  Under the proposed notice program, JND will mail all Class Members that can be identified with reasonable effort the cost-efficient Postcard Notice within thirty (30) calendar days of the Preliminary Approval Order's entry. Additionally, JND will disseminate the Publication Notice in *PR Newswire*, or a similar widely-circulated national wire service, and in *Investor's Business Daily* within twenty (20) calendar days after entry of the Preliminary Approval Order. Both the Postcard Notice and the Publication Notice will contain the URL for the Settlement website that JND will create and maintain for the Class. On the Settlement website Class Members will be able to locate further information regarding the Settlement, view and download the Notice and the Claim Form, and be advised of pertinent deadlines.

JND will also make copies of the Postcard Notice available to nominee holders such as brokerage firms that held Helios common stock for their customers during the Class Period. Those nominee holders will be requested to forward copies of the Postcard Notice to all beneficial owners of such shares, or, alternatively, to provide JND with a list of the names and addresses of such beneficial holders so that JND can mail the Postcard Notice to those beneficial owners directly.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the considerations that caused Lead Plaintiff and its Counsel to conclude that the Settlement is fair, reasonable and adequate; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion and to object; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation; and (vii) the time and place of the Settlement Hearing. The Notice also satisfies the PSLRA's separate requirements by,

*inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead Counsel's names, telephone numbers, and addresses; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §77z-1(a)(7). Thus, the proposed Notice contains all information required by the PSLRA and "fairly apprise" Class Members of the Settlement's terms "and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013).

Sending the Postcard Notice, combined with the Publication Notice and maintenance of a Settlement website containing the Notice is the best notice practicable under the circumstances here, typical of similar class action settlements, and will provide substantial savings for the Class. *See, e.g.*, *In re Banco Bradesco S.A. Secs. Litig.*, 2019 WL 6114713, *2 (S.D.N.Y. 2019) (postcard notice, along with posting of long-form Notice online and publication notice satisfied notice requirements); *Wilson v. LSB Indus.*, 2019 WL 3542844, *1 (S.D.N.Y. 2019) (same); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, Case No.: 12-cv-5724-JGK, Dkt. Nos. 80, 100 (S.D.N.Y. 2014) (Koeltl, J.) (same); *In re Advanced Battery*, 298 F.R.D. at 182-83 (approving postcard notice because it "minimize[d] notice costs").

Accordingly, Lead Plaintiff submits that the proposed notice program is adequate and should be approved by the Court.

### 2. The Proposed Schedule Is Fair, Adequate, and Reasonable

Lead Plaintiff requests the Court enter the schedule below for finalizing the Settlement:

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline for establishing Settlement website and posting of Notice and Claim Form on same | Not later than 15 calendar days after entry of Preliminary Approval Order (¶11) |
| Deadline for publishing the Publication Notice | Not later than 20 calendar days after entry of Preliminary Approval Order (¶14) |
| Deadline for mailing of Postcard Notice to potential Class Members and third-party nominees | 30 calendar days after entry of Preliminary Approval Order (¶10) |
| Deadline for filing of papers in support of the Settlement, Plan of Allocation, and Lead Counsel's Fee and Expense Application | 35 calendar days prior to the Settlement Hearing (¶24) |
| Deadline for receipt of exclusions or objections | 21 calendar days prior to the Settlement Hearing (¶18) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (¶24) |
| Deadline for filing of proof of mailing of Postcard Notice and posting of Notice and Claim Form | At, or any time prior to, the Settlement Hearing (¶13) |
| Settlement Hearing | 120 calendar days after entry of Preliminary Approval Order, or at the convenience of the Court thereafter |
| Deadline for submitting Claim Form | 30 calendar days after the Settlement Hearing (¶16(a)) |

## V.    CONCLUSION

Wherefore, Lead Plaintiff requests that the Court: (i) preliminarily approve the Settlement; (ii) certify the Class for the purposes of settlement only, appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; (iii) approve the proposed manner and form of notice to Class Members and schedule for finalizing Settlement; and (iv) schedule a final Settlement Hearing.

DATED: December 11, 2020              Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ *Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
shopkins@zlk.com
Gregory M. Potrepka (GP-1275)

gpotrepka@zlk.com
Andrew W. Rocco (admitted *Pro Hac Vice*)
arocco@zlk.com
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171

*Counsel for Lead Plaintiff and Lead Counsel
for the Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Shannon L. Hopkins, counsel for Lead Plaintiff, the Helios and Matheson Investor Group, hereby certify on this 11th day of December, 2020, that according to the word count feature of the word processing program used to prepare this brief, this brief contains 6,990 words (exclusive of the cover page, certificate of compliance, certificate of service, table of contents, table of authorities, and signature blocks) and complies with Local Civil Rule 11.1 of the Southern District of New York, as well as with Individual Practice Rule 2.D of the Honorable John G. Koeltl.

/s/ *Shannon L. Hopkins*
Shannon L. Hopkins

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon L. Hopkins, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 11th day of December, 2020.

/s/ *Shannon L. Hopkins*
Shannon L. Hopkins